**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DYLAN REEVES**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-04592 |
| | ) | |
| vs. | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| **ARGOLICA, LLC**, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12 (b)(1) AND 12 (b)(6) [DE #11]**

Plaintiff, Dylan Reeves ("Plaintiff"), by and through his undersigned attorneys, for his response to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [DE #11], states:

**I.    RELEVANT FACTS AND BACKGROUND**

Reeves brought this case because Argolica, a buyer of defaulted consumer debt, violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA"), when it sought to collect a debt that it did not own and to foreclose a mortgage that it did not hold and had no right to enforce. (Complaint, CM/ECF 1, ¶1). In 2011, Plaintiff is alleged to have defaulted in payments required by the Loan. On November 22, 2011, an action to collect the Loan and foreclose upon the Home was commenced by the filing of a case in the Circuit Court of Cook County, Illinois (Case No. 11-CH-40227). *Id.* at ¶20. That proceeding is referenced herein as the "Foreclosure Case." *Id.* After the filing of the Foreclosure Case, ownership of the Loan was transferred multiple times and at some point, Argolica owned the Loan. *Id.* at ¶20.  As of June 30, 2021, the Loan was owned by Limosa, LLC. *See* "Notice of Sale of Ownership of Mortgage Loan" attached as *Exhibit 1*. *Id.* at

1

¶22. On July 29, 2021 and after the Loan was transferred to Limosa, LLC, Argolica filed in the Foreclosure Case its Third Amended Complaint for Foreclosure of Mortgage and for Other Relief ("Third Amended Complaint"). A copy of the Third Amended Complaint is attached as *Exhibit 2*. *Id.* at ¶23. In the Third Amended Complaint, Argolica represented that Argolica was the owner of the Loan and had a right to collect the Loan from the Plaintiff through the foreclosure of an asserted lien on his Home. *Id.* at ¶24. The statements made by Argolica in the Third Amended Complaint were false. *Id.* at ¶25. At the time that Argolica filed the Third Amended Complaint, it did not own the Loan and Argolica had no legal capacity to collect the Loan, to maintain the Foreclosure Case or to foreclose any asserted lien on the Home. *Id.* at ¶26. The Third Amended Complaint also disclosed the Plaintiff's full name and complete social security number.

The foregoing facts must be taken as true and indeed are not challenged by Argolica in its Motion. Instead, Argolica relies solely on the argument that Plaintiff's claims are defeated because actual damages are not pled. This conclusion is also without basis upon even a cursory review of the Plaintiff's complaint. Plaintiff pleads that he incurred actual damages. At paragraph 27 of his Complaint, he pleads: "Upon learning of the Third Amended Complaint having been filed, Plaintiff was forced to retain legal counsel to research, prepare and file a motion to dismiss the Third Amended Complaint in the Foreclosure Case." *Id.* at ¶27. "This caused Plaintiff to incur attorneys fees that he would not have incurred but for the conduct of Argolica." *Id.*

## II. LAW AND ARGUMENT

### (A) Rule 12(b)(6) Standard

The Supreme Court instructs that to survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard

when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see*, also, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject- matter of the case to present a story that holds together."). All facts alleged by the plaintiff must be taken as true and all reasonable inferences from those facts must be made in the plaintiff's favor, although conclusory allegations that merely recite elements of a claim are not entitled to this presumption. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Because the focus of Rule 12(b)(6) motions is on the pleadings, they "can be based only on the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." (*Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)). But a nonmovant has more flexibility, for it "may elaborate on [its] factual allegations so long as the new elaborations are consistent with the pleadings." (*Id.*). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011)).

The complaint here meets and exceeds this standard.

**(B)     FDCPA Standard**

"To establish a *prima facie* case under the FDCPA, a plaintiff must prove that she is a natural person or 'consumer' who is harmed by violations of the FDCPA; that the debt arises from a transaction entered for personal, family or household purposes; that defendant is a debt collector; and that defendant has violated a provision of the FDCPA." *Pantoja v. Portfolio Recovery Associates, LLC*, 78 F. Supp. 3d 743, 745 (N.D. Ill. 2015) (citing *Freeland v. Kulak*, 2013 WL 6036841*3 (N.D. Ind. Nov. 13, 2013)). In its Motion, Argolica does not challenge any element of

Plaintiff's *prima facie* case, but instead argues that the Complaint constitutes an improper attempt to use the FDCPA as an enforcement mechanism for a violation of the Illinois Rules of Civil Procedure. Response, ¶II. That argument is taken up below.

### (C) Rule 12(b)(1) Standard

Article III of the Constitution grants federal courts the power to decide "Cases" and "Controversies." U.S. Const. art III, § 2. Standing is a doctrine "rooted in the traditional understanding of a case or controversy" that "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L.Ed. 2d 635 (2016). As such, in order to invoke a federal court's jurisdiction, a plaintiff must demonstrate standing to sue. *Id*.

Standing exists when a plaintiff: (1) has suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Id*. And because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case," the plaintiff must support each element "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). As such, general factual allegations regarding the elements of standing will suffice at the pleading stage. *Id*.

As to the "injury in fact" requirement, the plaintiff must demonstrate "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. The Supreme Court has stated that "[a] concrete injury must be de facto; that is,

4

it must actually exist." *Id*. Further, a concrete injury is one that is "real … not abstract." *Spokeo*, 136 S. Ct. at 1548. Although tangible injuries may be easier to recognize, intangible injuries can also be concrete. *Id*. at 1549.

As to determining whether intangible injuries may constitute injuries in fact, "both history and the judgment of Congress play important roles." *Id*. Specifically, because "Congress is well positioned to identify intangible harms that meet minimum Article III requirements," its judgment is "instructive and important." *Id*. But the Supreme Court has explained that a plaintiff does not automatically satisfy the injury-in-fact requirement :whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. To the contrary, the *Spokeo* court affirmed that "Article III requires a concrete injury even in the context of a statutory violation." *Id*.

Late last year, the Seventh Circuit issued a series of decisions addressing the issue of standing in the context of the FDCPA. *See, e.g., Larkin v. Fin. Sys. of Green Bay, Inc*., 982 F.3d 1060 (7th Cir. 2020) (no standing where plaintiffs did not allege any harm or appreciable risk of harm from receipt of dunning letters); *Brunett v. Convergent Outsourcing, Inc*., 982 F.3d 1067 (7th Cir. 2020) (no standing where plaintiff did not allege injury from statement in dunning letter about reporting release of indebtedness to the IRS); *Spuhler v. State Collection Serv., Inc*., 983 F.3d 282 (7th Cir. 2020) (plaintiffs failed to set forth evidence of specific facts demonstrating concrete injury due to omission of statement in dunning letter about accruing interest); *Nettles v. Midland Funding LLC*, 983 F.3d 896, 899 (7th Cir. 2020) (case remanded for dismissal on standing grounds where plaintiff did not allege that collection letter's overstatement of debt amount harmed plaintiff or created an appreciable risk of harm).

One general principal elucidated by the Seventh Circuit's recent decisions is that whether an FDCPA violation is categorized as procedural or substantive, a plaintiff "must allege (and later establish) that the statutory violation harmed him or '*presented an appreciable risk of harm to the underlying concrete interest that Congress sought to protect*.'" *Larkin*, 982 F.3d at 1060 (quoting *Casillas v. Madison Avenue Associates*, 926 F.3d 329, 333 (7th Cir. 2019)); see, also, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014) (*recognizing "substantial risk" of imminent future injury suffices to satisfy Article III* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013).

A motion to dismiss under Rule 12(b)(1) challenges the Court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where, as here, a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction—a facial challenge—the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences" in the plaintiff's favor. *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015). "[W]hen evaluating a facial challenge to subject matter jurisdiction," the Court employs the *Twombly-Iqbal* "plausibility" standard, "which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174.

**(D)** **Plaintiff Has Pled Actual Damages and the Court Has Jurisdiction**

Relying on the Seventh Circuit's recent dispatch of a flurry of decisions dismissing FDCPA action where actual damages were not clearly pled, Defendant asks the Court here to ignore the fact that actual damages have been plead, suggesting instead that retaining an attorney and incurring fees to research, draft and appear at a hearing in state court to obtain proper dismissal of an improperly filed complaint is the equivalent to the no harm no foul scenario encountered by a consumer when she merely consults an attorney following receipt of an improper communication. This false equivalency has no merit.

**(E) Plaintiff's Complaint is Not an Improper Attempt to Use the FDCPA to Circumvent State Court Procedural Rules**

In *Heintz v. Jenkins,* 514 U.S. 291 (1995), the United States Supreme Court held that the FDCPA applies to attorneys who "'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." 514 U.S. at 299. And while the Supreme Court recently held in *Obduskey v. McCarthy & Holthus, LLP,* 139 S. Ct. 1029 (2019) that businesses (including law firms) engaged in no more than *non* judicial foreclosure proceedings are not "debt collectors" under the FDCPA except for the limited purpose of 15 U.S.C. §1692f(6), that holding expressly did not affect cases involving judicial foreclosure proceedings as here. *See Obduskey,* 139 S. Ct. at 1039 ("whether those who judicially enforce mortgages fall within the scope of the primary definition is a question we can leave for another day.").

Plaintiff's position is supported by decisions finding plausible FDCPA violations where a plaintiff pleads that a false statement was made in a state court judicial proceeding. Illustrative is Judge Durkin's opinion from October 30, 2019 in *Berg v. McCall Raymer Leibert Pierce, LLC*, No. 19 C 5113, 2019 WL 5592720 (N.D. Ill. 2019). In that case, the Court was called upon to decide a motion to dismiss on facts strikingly similar to those here. *Id.* In *Berg*, the plaintiffs alleged violation of the FDCPA when the law firm filed an action against a party not obligated on the subject note and mortgage. *Id. *2.* As here, the defendant argued that foreclosure activity fell outside of the FDCPA. *Id. *3.* In denying the motion to dismiss, Judge Durkin provides this helpful discussion of the state of the law on this issue:

> Alternatively, MRLP contends that dismissal is proper because *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938 (7th Cir. 2011) established that the FDCPA does not extend to state court filings. But contrary to MRLP's representation, the court in *O'Rourke* expressly stated that "nothing in the opinion states or should be read to address whether the [FDCPA] applies to the entire judicial process." *O'Rourke,* 635 F.3d at 941, n.1.

7

Instead, *O'Rourke* merely held that filings meant to deceive judges do not warrant protection because the FDCPA's "prohibitions are clearly limited to communications directed to the consumer and do not apply to state judges." *Id.* at 941. Moreover, the Seventh Circuit held more recently in *Marquez v. Weinstein, Pinson & Riley, P.S.,* 836 F.3d 808 (7th Cir. 2016) that the FDCPA *can* regulate state court pleadings and filings—at least for purposes of Section 1692e. *See Marquez,* 836 F.3d at 810 (agreeing with the "[n]umerous circuits" that have already "concluded that pleadings or filings in court can fall within the FDCPA").

Whether a Section 1692f violation may be premised upon a state court filing is less clear. The Seventh Circuit observed in *Bentrud v. Bowman, Heintz Boscia & Vician, P.C.,* 794 F.3d 871 (7th Cir. 2015) and *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC,* 480 F.3d 470 (7th Cir. 2007) that Section 1692f(6), which prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property" under certain circumstances, suggests that no portion of Section 1692f is applicable to state judicial proceedings. *See Bentrud,* 794 F.3d at 874-75 (noting that the phrase "nonjudicial action" "implies that state judicial proceedings are outside the scope of § 1692f."); *see also Beler,* 480 F.3d at 475 ("The implication [of § 1692f(6)] is that state judicial proceedings are outside the scope of § 1692f."). But neither case squarely held that state judicial proceedings are outside the scope of Section 1692f. Accordingly, this Court declines to conclude as a matter of law that Section 1692f can never apply to conduct during state judicial proceedings. *See Eul v. Transworld Sys.,* 2017 WL 1178537, at *15 (N.D. Ill. Mar. 30, 2017) ("this Court cannot conclude as a matter of law that alleged misconduct during state judicial proceedings is never actionable under § 1692f"). And because the Court concludes that Section 1692e can support a claim based on the same state court filings, it need not do so here. Thus, dismissal is not proper solely because the complaint concerns the content of state court filings.

Nor does the Court find that the Bergs' claims are barred because the filings at issue concern a judicial mortgage foreclosure, and thus a secured debt. The Seventh Circuit has yet to address the issue, but the Court is persuaded by the other courts in this District and those courts of appeals that have held that judicial mortgage foreclosure proceedings constitute "debt collection" regulated by the FDCPA.[4] *See, e.g., Kabir v. Freedman Anselmo Lindberg LLC,* 2015 WL 4730053, at *3 (N.D. Ill. Aug. 10, 2015) ("a foreclosure action qualifies as debt collection"); *see also Khan v. OneWest Bank, F.S.B.,* 2017 WL 1344535, at *7 (N.D. Ill. Apr. 12, 2017) ("mortgage foreclosure can be debt collection"); *Glazer v. Chase Home Fin. LLC,* 704 F.3d 453, 461-63 (6th Cir. 2013) (same); *Kaymark v. Bank of Am., N.A.,* 783 F.3d 168, 179 (3d Cir. 2015) (same); *Wilson v. Draper &* Goldberg, P.L.L.C, 443 F.3d 373, 376 (4th Cir. 2006) (initiation of foreclosure proceedings was an attempt to collect "debt" under the FDCPA). The Seventh Circuit has made clear that

> "an explicit demand for payment" is not required for an activity to have been taken "in connection with the collection of any debt." *Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 385 (7th Cir. 2010). And a broader reading makes sense in this context, because "[t]here can be no serious doubt that the ultimate purpose of foreclosure is the payment of money." *Glazer,* 704 F.3d at 463. "*[E]very* mortgage foreclosure . . . is undertaken for the very purpose of obtaining payment on the underlying debt, either by persuasion (*i.e.,* forcing a settlement) or compulsion (*i.e.,* obtaining a judgment of foreclosure, selling the home at auction, and applying the proceeds from the sale to pay down the outstanding debt.)." *Id.* at 461. Absent controlling authority to the contrary, this Court concludes that a judicial foreclosure action qualifies as debt collection under the FDCPA. To find otherwise "would create an enormous loophole in the [FDCPA] immunizing any debt from coverage if that debt happened to be secured by a real property interest"— a result which Congress surely did not intend. *Kabir,* 2015 WL 4730053, at *3 (quoting *Wilson,* 443 F.3d at 376); *see also Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1213 (11th Cir. 2012) (holding otherwise would create a loophole, the practical result being that the FDCPA "would apply only to efforts to collect unsecured," and "[t]hat can't be right").

*Id.* *3-4.

As observed by Judge Durkin, the Seventh Circuit has yet to determine whether mortgage foreclosure actions qualify as debt collection activities under the FDCPA, but those courts of appeals to consider the issue have all held that communications related to mortgage foreclosures are covered by the FDCPA. *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015) ("Nowhere does the FDCPA exclude foreclosure actions from its reach. On the contrary, foreclosure meets the broad definition of 'debt collection' under the FDCPA, and it is even contemplated in various places in the statute." (citations omitted)); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013) ("[M]ortgage foreclosure is debt collection under the FDCPA."); *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012) ("A communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest."); *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) ("[A] party who satisfies § 1692a(6)'s general definition of a 'debt

9

collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests."); *Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 376 (4th Cir. 2006) ("[A]ctions surrounding the foreclosure proceeding were attempts to collect that debt."); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 236 (3d Cir. 2005) ("[I]f a collector were able to avoid liability under the FDCPA simply by choosing to proceed in rem rather than *in personam*, it would undermine the purpose of the FDCPA." (citation omitted) (internal quotation marks omitted)).

The Sixth Circuit provides this instructive analysis in *Montgomery v. Huntington Bank,* 346 F.3d 693, 696 (6th Cir. 2003). In that case the plaintiff brought suit under three sections of the FDCPA—§§1692c, 1692d, and 1692e. As to those three sections, the court found that "relief is limited to 'consumers' . . . under §1692c." In reaching this conclusion, the Court observed that "§ 1692c 'appears to be the most restrictive of the FDCPA's provisions.'" *Id.* (quoting *Wright v. Fin. Serv. of Norwalk, Inc.,* 22 F.3d 647, 649 n.1 (6th Cir. 1994)). It reached a different conclusion as to the other sections. Noting that §1692d explicitly provided for relief for *any person* harassed or oppressed in the collection of a debt, and further noting that §1692e protected against any false or misleading methods of debt collection and that §1692k(a) permits enforcement of that section by *any person* who is harmed by a debt collector, the court concluded that these provisions collectively demonstrate that any aggrieved party may bring suit under §§1692d and 1692e.[3] *Id.* at 697.

District courts in the Seventh Circuit engaged in a similar analysis to allow plaintiffs to pursue §§1692e and 1692f claims for alleged misrepresentations in state court proceedings. *See*, e.g., *Tevere v. Weltman, Weinberg & Reis, Co.,* No. 1:17-cv-2455, 2019 WL 2341389, at *3 (N.D. Ill. June 3, 2019)("Because the FDCPA prohibits debt collectors from misrepresenting the legal status of a debt and from seeking to collect amounts not permitted by law, courts have held that a

10

debt collector violates the Act when it sues a consumer for legally unattainable relief."); *Rehman v. Pierce & Associates, PC*, No. 16 C 5178, 2017 WL 131560, at *4 (N.D. Ill. August 10, 2017)("The filing of a legally defective debt collection suit can violate §1692e where the filing falsely implies that the debt collector has legal recourse to collect the debt."); *Bauer v. RoundPoint Mortg. Servicing Corp.,* No. 18 C 3634, 2018 WL 5388206, at *5 (N.D. Ill. Oct. 29, 2018) (threat to file a suit barred by the single-refiling rule can be deceptive under the FDCPA); *Kabir v. Freedman Anselmo Linberg LLC*, No. 14 C 1131, 2015 WL 4730053, at *3 (N.D. Ill. August 10, 2015)("The Court thus agrees that a foreclosure action qualifies as debt collection.").

Importantly, the Court in *Kabir* made the distinction between allegations that the debt collector merely violated a state court procedural rules and the representations contained in those pleadings, writing:

> Further, the Kabirs are not complaining about the wording of the February 2013 pleadings or about whether FAL followed Illinois procedural rules or violated the Illinois Mortgage Foreclosure Law in filing the motions at issue. *Cf. Beler,* 480 F.3d at 47 (plaintiff challenged the form of the state court complaint, not any false representations in the pleadings, under § 1692e); *Washington v. N. Star Capital Acquisition, LLC,* No. 08 C 2823, 2008 WL 4280139, at *2 (N.D. Ill. Sept. 15, 2008) (plaintiff could not proceed on § 1692e claim where he alleged that the defendant violated Illinois pleading requirements because the alleged assignment was not attached to the state court complaint but did not allege that the statements in the state court complaint were false). Instead, the Kabirs are complaining that FAL made false statements to them, misrepresenting the status of a legal action related to their debt and harassing them by pursuing a judgment of foreclosure in a dismissed case. These allegations plausibly suggest violations of § 1692e, making judgment for FAL inappropriate on that claim. *See Gearing v. Check Brokerage Corp.,* 233 F.3d 469, 472-73 (7th Cir. 2000) (allegation in state court complaint about the legal status of debt was false representation in violation of § 1692e); *Grant-Hall v. Cavalry Portfolio Servs., LLC,* 856 F. Supp. 2d 929, 944 (N.D. Ill. 2012) ("The filing of a legally defective debt collection suit can violate § 1692e where the filing falsely implies that the debt collector has legal recourse to collect the debt.").

*Kabir*, 2015 WL 4730053, at *5; *Webb v. Law Office of Ira T. Nevel, LLC*, No. 15 C 01087, WL 946962 (N.D. Ill. March 14, 2016).

### (F)     Materiality Is A Question of Fact and Cannot Defeat a *Prima Facie* Case

Defendant also argues that it can escape liability for suing the Plaintiff for a debt it had not right to collect because the statement that Argolica owned the debt was not material. This argument simply misses the mark. Argolica not only did not own the debt but it had no legal standing to bring the suit in its name and when it filed the amended complaint it represented to the Plaintiff that it did have that legal standing and that Plaintiff's home could be taken and sold at foreclosure - clearly relief that Argolica could not legally obtain. It is a fundamental principle of Illinois law that a party must have standing to bring suit and that a stranger to a transaction has no right to call upon a party to answer allegations or defend claims not asserted by a real party in interest. Here, Argolica's false statement that it had standing and could pursue the relief sought was indeed material because it goes to the very heart of the claims asserted against him - who if anyone was he obligated to pay and what defenses did he have against that party. Moreover, this is not a case where there was a simple misnomer. Here, the entities are distinct though possibly related. There were multiple transfers of the subject note and this was highly material to Plaintiff to who was the proper party in interest.

### III.     CONCLUSION

For each of the foregoing reasons, Plaintiff prays that the motion be denied.

12

| | |
|---|---|
| Dated: January 4, 2022 | *Respectfully submitted,* |
| | **DYLAN REEVES** |
| | By: /s/ *Rusty Payton* |
| | Rusty Payton |
| | PAYTON LEGAL GROUP |
| | 20 North Clark Street, Suite 3300 |
| | Chicago, Illinois 60602 |
| | (773) 682-5210 |
| | info@payton.legal |
| | |
| | Arthur C. Czaja |
| | LAW OFFICE OF ARTHUR CZAJA |
| | 7521 N. Milwaukee Avenue |
| | Niles, Illinois 60714 |
| | (847) 647-2106 |
| | arthur@czajalawoffices.com |
| | |
| | *Counsel for Plaintiff* |

## **CERTIFICATE OF SERVICE**

I certify that on January 4, 2022, a copy of the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 (b)(1) AND 12 (b)(6) [DE #11]** was served via the Court's Electronic Filing System on Defendant and counsel of record:

Pamela J. Leichtling
James V. Noonan
Noonan & Lieberman, Ltd.
33 N. LaSalle Street, Suite 1150
Chicago, IL 60602
pleichtling@noonanandlieberman.com
jnoonan@noonanandlieberman.com

*Counsel for Defendant*

By: /s/ *Rusty A. Payton*